UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

QIAN CHEN,

                Plaintiff,

        v.

UNIVERSITY OF WASHINGTON,

                Defendant.

CASE NO. C07-055RSM

ORDER ON MOTION FOR SUMMARY JUDGMENT

      This matter is before the Court for consideration of the motion for summary judgment filed by defendant University of Washington ("the University"). Dkt. # 22. The Court heard oral argument on this motion on February 21, 2008, and has fully considered the parties' arguments, memoranda, and the balance of the record. For the reasons set forth below, the Court shall GRANT defendant's motion.

FACTUAL BACKGROUND

      Plaintiff Qian Chen is a Chinese-born individual with a visual impairment due to macular degeneration. Appearing *pro se* and *in forma pauperis*, he filed this action seeking $1.5 million in damages from the University for failing to accept him as a student in the School of Music, and for dismissing him from the University. Dkt. # 7. As the complaint failed to meet the pleading requirements of F.R.Civ.Proc. 8, and failed to allege any basis for the Court's jurisdiction, the Court ordered plaintiff to show cause why the complaint should not be dismissed. Dkt. # 8. In response, plaintiff filed a one-

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 1

page statement, asserting that he was suing the University for violation of his civil rights and violation of

the Americans with Disability Act.  Dtk. # 10.  Specifically, plaintiff alleged that the University

discriminated against him on the basis of his age, ethnicity, and disability, in the following ways: (1) not

allowing his grades to be posted; (2) giving him failing grades so that he could be dismissed from the

University; (3) forcing him to take multiple tests on non-functioning computers; and (4) refusing to

accept him as a music major.  Amended Complaint, Dkt. # 10.  The Court allowed the matter to proceed

on the basis of this "amended complaint".  The University has moved for summary judgment on all

claims, asserting that plaintiff was dismissed for purely academic reasons, in that he failed to maintain a

2.0 grade point average in his classes as required for continued enrollment.

Plaintiff's transcript shows that he enrolled as a non-matriculated student in spring quarter, 2002.

Declaration of Amanda Paye, Dkt. # 26, Exhibit 9.  He became a matriculated student in summer 2002.

His cumulative grade point average ("GPA") at this time was 2.75. In fall quarter, 2002, he enrolled in

English as a Second Language ("ESL") and first-year German, but withdrew from both courses.  *Id*.  In

winter quarter 2003, he enrolled in the same two courses; he then withdrew from the German course and

received a failing 1.0 grade in ESL, bringing his GPA down to 2.17.   Throughout 2003 and the first

quarter of 2004 his GPA hovered around the 2.14 to 2.46 range.   After spring quarter, 2004, his GPA

dropped to 1.89 and plaintiff was placed on academic probation.   *Id.*   Defendant states that plaintiff left

the University and enrolled in another school at this time (spring of 2004), without complying with the

University's policy on withdrawing from his courses.  Plaintiff returned to the University in winter

quarter, 2005, and enrolled in two dance classes; he earned a 3.7 in the one-credit jazz dance class (after

convincing the teacher to raise his original grade) and his GPA rose to 1.96; still not high enough to

escape probation status.  *Id*.  In his final quarter, spring 2005, plaintiff attempted nine credits, including a

five-credit Asian culture class in which he received a low grade of 1.2.  His cumulative GPA was now

1.90, and plaintiff was dismissed from the University.  *Id*.  One of his discrimination claims is that the UW

refused to post his grades for summer, 2005.  However, plaintiff had already been dismissed at that time.

Plaintiff filed a one-page statement in opposition to the summary judgment motion, asking that the

 ORDER ON MOTION FOR SUMMARY
JUDGMENT - 2

1   Court consider the "evidence" that he submitted earlier, consisting of copies of e-mails.  Dkt. # 15.  He

2   also presented an eloquent and articulate argument at the February 21 hearing.   However, plaintiff has

3   not presented any actual evidence to overcome the University's showing that there was no discriminatory

4   purpose behind his dismissal.

5                                               DISCUSSION

6          Summary judgment is not warranted if a material issue of fact exists for trial.  *Warren v. City of*

7   *Carlsbad*, 58 F. 3d 439, 441 (9th Cir. 1995); *cert. denied*, 516 U.S. 1171 (1996).  The underlying facts

8   are viewed in the light most favorable to the party opposing the motion.  *Matsushita Electric Industries*

9   *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  *Pro se* documents are to be liberally construed.

10  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  However, "[t]he party opposing summary judgment may

11  not rest on conclusory allegations, but must set forth, by declaration or otherwise, specific facts showing

12  that there is a genuine issue for trial."  *Leer v. Murphey*, 844 F. 2d 628  (9th Cir.1988); *citing Berg v.*

13  *Kincheloe,* 794 F.2d 457, 459 (9th Cir.1986).

14         The party moving for summary judgment has the burden to show initially the absence of a genuine

15  issue concerning any material fact.  *Adickes v. S. H. Kress & Co*., 398 U.S. 144, 159 (1970).   However,

16  once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the

17  existence of an issue of fact regarding an element essential to that party's case, and on which that party

18  will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  To

19  discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence

20  showing that there is a genuine issue for trial.  *Id*. at 324.

21         The basis for defendant's motion for summary judgment is the assertion that plaintiff has not made

22  a *prima facie* case under either the Americans with Disabilities Act ("ADA") or the Rehabilitation Act.

23  To establish a *prima facie* case of discrimination based on his disability, in violation of either the ADA of

24  the Rehabilitation Act ("the Acts"), the plaintiff must produce evidence that (1) he is disabled within the

25  meaning of the Acts; (2) he is qualified to remain a student at the university, meaning that he can meet the

26  essential eligibility requirements with or without an accommodation; (3) he "was dismissed solely because

27

28   ORDER ON MOTION FOR SUMMARY
     JUDGMENT - 3

of [his] disability"; and (4) either the UW received federal financial assistance (for the Rehabilitation Act), or is a public entity (for the ADA claim).  *Wong v. Regents of the University of California*, 192 F. 3d 807, 816 (9th Cir. 1999); *citing Zukle v. Regents of the University of California*, 166 F. 3d 1041, 1045 (9th Cir. 1999).

In moving for summary judgment, the University essentially concedes elements (1) and (4)  (that plaintiff is disabled by his visual impairment, and that it either receives federal funds or is a public entity within the meaning of the ADA).  However, defendant correctly asserts that plaintiff has not proved, and cannot prove, the second element of his *prima facie* case: that he was qualified to remain a student at the University.   Under written University policy, plaintiff was dismissed for poor academic performance, when his GPA dropped below 2.0 and remained there during his probation period.

The relevant University policy states:

**Section 5.  Dismissal for Low Scholarship**

Any undergraduate student on academic probation will be dropped at the end of his or her probationary quarter unless he or she either (1) has attained at least a 2.00 cumulative average or (2) has attained at least a 2.50 average during each quarter of his or her current probationary period. . . .

Paye Declaration, Dkt. # 26, Exhibit 7.   As described above, plaintiff's cumulative GPA dropped to 1.89 after spring quarter 2004, and he was placed on academic probation.  He did not enroll for the next two quarters (summer and fall of 2004).  He did enroll for winter, 2005, and attained a 2.62 average for that one quarter, so he was permitted to remain, although his cumulative GPA was 1.96.  The following quarter, spring 2005, he only attained a 2.22 for the quarter, and his cumulative GPA was 1.90.  Under the standard set forth above, he was properly dismissed at that time for his low scholarship.

Once the University has demonstrated that plaintiff was not qualified to remain a student, he bears the burden of producing evidence to demonstrate both that a reasonable accommodation exists, and that this accommodation "would enable [him] to meet the educational institutional's minimal requirements." *Wong*, 192 F. 3d at 817, *quoting Zukle*, 166 F. 3d at 1047.  Plaintiff has not even attempted to meet this burden; he has presented no cognizable evidence at all.  Moreover, the University has demonstrated that it went to great lengths to accommodate plaintiff's visual handicap.  Short of doing away with the

 ORDER ON MOTION FOR SUMMARY
JUDGMENT - 4

1  applicable academic standards, it is difficult to discern what further accommodation would have allowed

2  plaintiff to attain the required GPA.

3         In the context of examining whether a university has violated a student's constitutional right to

4  due process in dismissing him, the court "should show great respect for [the] faculty's professional

5  judgment" when reviewing "the substance of a genuinely academic decision."  *Regents of the University*

6  *of Michigan v. Ewing*, 474 U.S. 214, 225 (1985).  In the specific area of ADA and Rehabilitation Act

7  claims against educational institutions, the Ninth Circuit Court of Appeals has concluded (as have other

8  circuits) that an educational institution's academic decisions are entitled to deference.  *Zukle*, 166 F. 3d at

9  1047 (*citing with approval* cases from the First, Second, and Fifth circuits.)  Thus, courts "typically defer

10  to the judgment of the academics because courts generally are 'ill-equipped', as compared with

11  experienced educators, to determine whether a student meets a university's 'reasonable standards for

12  academic and professional achievement.'"  *Wong*, 192 F. 3d at 817; *quoting Zukle*, 166 F. 3d at 1047

13  (internal citations omitted).

14         The deference given the educational institution is, however,  not absolute.  The Court still has the

15  final responsibility of enforcing the Acts (ADA and Rehabilitation Act), including the determination as to

16  whether an individual is qualified for the educational institution's program, with or without

17  accommodation.  *Id.*   The Court must ensure that the educational institution does not "disguise truly

18  discriminatory requirements" as academic decisions.  *Id.*, *quoting Zukle*, 166 F. 3d at 166.  The Court

19  must be satisfied that the educational institution has met its obligation "to seek suitable means of

20  reasonably accommodating a handicapped person and to submit a factual record indicating that it

21  conscientiously carried our this statutory obligation."  *Zukle*, 166 F. 3d at 1048; *quoting Wynne v. Tufts*

22  *University School of Medicine*, 932 F. 2d 19, 225-26 (1st Cir. 1991) (*en banc*).

23         Subsumed within this standard is the institution's duty to make itself aware of the
         nature of the student's disability; to explore alternatives for accommodating the student;
24         and to exercise professional judgment in deciding whether the modifications under
         consideration would give the student the opportunity to complete the program without
25         fundamentally or substantially modifying the school's standards.

26
*Wong*, 192 F. 3d at 818.
27
 ORDER ON MOTION FOR SUMMARY
28  JUDGMENT - 5

Here, the University has submitted declarations and documentary evidence demonstrating that the Disability Resource Services office developed a reasonable program to accommodate plaintiff's visual handicap, and put it in writing for distribution to the appropriate teachers.  Declaration of Dyane Haynes, Exhibit 1, 2.  The plan described the source of plaintiff's visual handicap as macular degeneration, which means that he can only see what is in his peripheral field; the center of his visual field is blind.  *Id.*, p. 2. To accommodate this disability, the program provided that the following would be provided to Mr. Chen:

1.  Class and text materials in alternate formats, such as large type (14-point font or larger) or in electronic versions that could be read by a special computer program, which was also provided.

2.  Permission to check out reserved library materials for longer periods than usual.

3.  For class films, a visual description and an opportunity to view them a second time.

4.  Permission to tape record lectures.

5.  Notetaking services, provided by student volunteer scribes.

6.  Copies of overheads used in class.

7.  Lighting modifications as needed.

8.  Provision of class information in both written and verbal form.

9.  Double time for completing in-class assignments.

10.  Special provisions for examinations, including double time, a private testing location, large print exam, use of a computer to read or enlarge the text, a reader and scribe (which requires some advance notice), and the use or oral exams instead of written ones where appropriate. *Id.*, pp 3-4.

Plaintiff has presented no evidence whatsoever to demonstrate that these accommodations were inadequate or unreasonable.  Indeed, as noted, he has not presented any evidence at all.   The conclusory allegations in his complaint regarding these accommodations have been thoroughly rebutted by the evidence submitted by defendant.   For example, plaintiff repeatedly blamed his academic failure on malfunctioning computers, and incompetent staff, even asserting that the computer had been sabotaged. However, Dan Comden, the Access Technology consultant, has testified by declaration that he responded

 ORDER ON MOTION FOR SUMMARY
JUDGMENT - 6

many times to Mr. Chen's complaints that the computers were not working, and each time found the computers to be working properly.  Declaration of Dan Comden, Dkt. # 23, ¶¶ 3- 9; *see also* attached e-mails.  Mr. Comden stated that he and other staff members continued to provide computer support services to plaintiff despite the attacks and accusations of sabotage by plaintiff.

Mr. Comden also references, in his declaration, plaintiff's verbally abusive remarks toward female staff members.  *Id.*, ¶¶3, 10.  Although declarations from these staff members have not been provided, Mr. Comden states that he heard plaintiff's remarks himself and informed plaintiff that they were inappropriate.  *Id.*, ¶ 3.  Apparently such conduct toward University staff was sufficiently common that in January 2004, plaintiff was admonished by letter from Vice President of Student Affairs Ernest Morris.  Plaintiff was advised that he would be subject to discipline if he continued to engage in "abusive and intimidating behavior" toward University staff.  Declaration of Amanda Paye, Dkt. # 26, Exhibit 10.   He had to be reminded of that letter and its requirements later in the year, on November 22, 2004.  *Id.*, Exhibit 11.  On more than one occasion, plaintiff was escorted from buildings, particularly the piano practice rooms, by campus police.  *Id.*, ¶¶13, 14.  No charges were brought on those occasions, but more recently plaintiff was removed from Geberding Hall for "creating a disturbance", and an incident report was filed.  Declaration of Kelly Wiley, Dkt. # 25, unnumbered exhibit.

In addition to blaming the computers and staff for his low academic performance, plaintiff expected extra accommodation beyond what was set forth in his individualized program.  For example, in his Asian culture class, he asked to be completely excused from quizzes on Japanese films.  Declaration of Dyane Haynes, Exhibit 3.  He also asked the instructor to deviate from the accommodation policy in other ways, and to take an exam despite arriving late, without excuse.  *Id.*, Exhibit 4.  In each case the professor's response was that he would adhere to the accommodation policy requirements, and would not otherwise alter the course requirements beyond what was set forth therein.  *Id.*  Plaintiff has presented neither argument nor evidence to show why this was unreasonable.

CONCLUSION

In summary, the Court finds that the University has met its obligation "to seek suitable means of

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 7

reasonably accommodating a handicapped person and to submit a factual record indicating that it conscientiously carried our this statutory obligation." *Zukle*, 166 F. 3d at 1048; *quoting Wynne v. Tufts University School of Medicine*, 932 F. 2d at 225-26.   As plaintiff has failed to present evidence demonstrating that he could meet the University's essential eligibility requirements for continued enrollment with or without accommodation, he has failed to present a *prima facie* case of discrimination under either the ADA or the Rehabilitation Act. *Wong v. Regents of the University of California*, 192 F. 3d at 816.  Defendant's motion for summary judgment is accordingly GRANTED, and this action is DISMISSED.

The Court declines to grant defendant's accompanying motion to "ban" plaintiff from the University campus.  While defendant has described verbal abuse and rudeness by plaintiff, it has not presented any evidence demonstrating that plaintiff has actually threatened any student or staff member, or that his conduct rises to the egregious level of "stalking" found in *Souders v. Lucero*, 196 F. 3d 1040 (9th Cir. 1999).   Further, in that case the Court did not itself issue an exclusion Order, but simply found that the university's exclusion order did not violate the plaintiff's civil rights. *Id.*  Thus, in the event that plaintiff's conduct becomes disruptive in the future, the University may take appropriate measures under its own policies and procedures to exclude him from the campus at that time. *Id.* at 1042.

DATED this 5  Day of March 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR SUMMARY
JUDGMENT - 8